2021 IL App (1st) 160060-U

No. 1-16-0060

THIRD DIVISION
JANUARY 27, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County, |
| | ) | |
| v. | ) | No. 12 CR 8183 |
| | ) | |
| DYSHAWN BROWN, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The trial court's judgment summarily dismissing defendant's postconviction petition is reversed.  The petition states the gist of a claim defendant's plea was involuntary where defendant was unaware of his sentencing rights as a juvenile under the eighth amendment; defendant accepted a 30-year plea agreement after the trial court admonished defendant he faced a  20-60 year sentence, however *de facto* life sentences of 40 years or more are unconstitutional without a finding of depravity as subsequently determined by the United States Supreme Court in *Miller v. Alabama*.

¶ 2    Pursuant to a negotiated guilty plea, defendant, Dyshawn Brown, was convicted of first

degree murder and sentenced to 30 years' imprisonment.  He appealed the summary dismissal of

his postconviction petition.  He contended he stated arguable claims that his plea was involuntary because (1) counsel rendered ineffective assistance in the guilty-plea proceedings, and (2) his plea was based upon his coerced confession and counsel was ineffective for not litigating a motion to suppress that confession. Defendant also contended that he stated an arguable claim that he was deprived of the benefit of the bargain on his negotiated plea by not being duly admonished regarding mandatory supervised release (MSR).  We affirmed.  Defendant filed a petition for rehearing from that judgment and later a motion to file a supplemental petition for rehearing.  We granted defendant's motion for leave to file a supplemental petition and ordered the State to respond.  For the following reasons, we now reverse the trial court's judgment summarily dismissing defendant's postconviction petition and remand for second-stage postconviction proceedings.

¶ 3                                  BACKGROUND

¶ 4      The State charged defendant with first degree murder for allegedly intentionally or knowingly killing Lawrence Wilson on or about August 7, 2011, while defendant was armed with, and personally discharged, a firearm.  Defendant was 15-years old at the time of the offense.  The same indictment charged Anthony Pettye with first degree murder but the record does not include the allegations against him.  An earlier indictment, 11 CR 14421, charged defendant, Devonte Lamb, and Desmond Smart with the first degree murder of Wilson but was superseded in June 2012.

¶ 5      In December 2011, on the State's motion, the trial court ordered buccal swabs from defendant, Lamb, and Smart. In January 2012, the State notified defendant that evidence swabbed from the pump and stock of a particular shotgun would be consumed in DNA testing.

¶ 6     In April 2012, counsel filed a motion to suppress defendant's statements claiming that, in questioning after his arrest on August 8, 2011, he was unable to understand his *Miranda* rights "due to [his] physical, psychological, mental, education, emotional, and/or psychological state, capacity and condition." He also claimed that his statements were the "result of psychological and mental coercion" and confrontation "with certain material misrepresentations."

¶ 7     Also in April 2012, at the State's behest, the trial court ordered a behavioral clinical examination (BCX) of defendant to determine whether he was capable of understanding *Miranda* warnings.  In May 2012, psychiatrist Dr. Nishad Nadkarni of the court's Forensic Clinical Services reported to the court that he examined defendant and concluded to a reasonable degree of psychiatric certainty that defendant was capable of comprehending *Miranda* warnings at or about the time of his arrest.

¶ 8     On June 11, 2012, the original indictment was superseded.  Counsel entered defendant's not-guilty plea and asked the trial court for a plea conference.  Defendant acknowledged that he wanted the conference and signed a written request for a pretrial conference.  After the conference, the case was continued to July 2.

¶ 9     On July 2, 2012, counsel told the trial court that defendant was "no longer interested in" a plea, which defendant confirmed.  Counsel noted that he had a pending motion to suppress.  The State moved for specificity on the motion to suppress, noting that defendant's statement was on video. Defense counsel stated that he was not alleging "any acts outside of the video." Defendant swore that the allegations in the motion to suppress were true to the best of his belief and knowledge.  The case was continued to July 26 for a hearing on the motion to suppress.

¶ 10     On July 26, 2012, the State told the trial court that the parties reached a plea agreement for 30 years imprisonment.  Without objection, the State amended the indictment to remove the

allegation that defendant was armed with, and had personally discharged, a firearm during the first degree murder of Wilson. The court read the amended charge, and defendant agreed that he was pleading guilty to that charge. The court admonished him that he "could be sentenced anyplace from a minimum of 20 to a maximum of 60 years with three years mandatory supervised release" and no probation or conditional discharge. Defendant said that he understood. The court described defendant's right to a jury trial. Defendant acknowledged the admonishments and signed a jury waiver. The court described defendant's rights in a trial, including his rights to remain silent, present evidence, and cross-examine witnesses. Defendant said that he understood and was waiving those rights. Defendant denied that any promises or agreements other than the plea agreement had been made to him, he denied that "anybody forced [him] to plead guilty," and he agreed that he was pleading guilty of his own free will.

¶ 11 The State recited the factual basis for the plea, after which counsel stipulated thereto and defendant swore that it was true to the best of his belief and knowledge. Defendant was with Lamb and Smart at Pettye's apartment on the night in question when Pettye offered them money to kill a Gangster Disciples member. Pettye told defendant to do it, and he agreed. The four men left the apartment and asked a passerby who had marijuana to sell. The man – Wilson – said that he had some. They believed him to be a Gangster Disciple, so they told him they needed to get money and went some distance away. A short time later, Lamb beckoned Wilson towards the four men, and defendant shot Wilson in the chest as he approached. The four men returned to Pettye's apartment. Wilson died of his chest injuries.

¶ 12 The trial court accepted defendant's plea, finding that he understood the charge and sentencing he faced, and was pleading guilty voluntarily and knowingly. Defendant waived his right to a presentencing investigation, and the State acknowledged that he had no prior

convictions. The court asked defendant if he wanted to make a statement, and he said "Sir, could I – no." The court then sentenced defendant to "30 years in [prison], three years mandatory supervised release, credit for 353 days." The mittimus also stated that defendant's sentence included three years' MSR in addition to 30 years' imprisonment. Counsel withdrew the motion to suppress, telling the court that he discussed the withdrawal with defendant, and defendant said "yes" when asked if he was "okay" with the withdrawal. The court informed defendant of his appeal rights, which he said he understood.

¶ 13 Defendant filed the instant *pro se* postconviction petition in August 2015. The petition alleged defendant's confession was involuntary because as a 15-year-old, police coerced his confession by using his mother as a violent and threatening interrogator while defendant was intoxicated on marijuana barefoot, and tied to a chair. Defendant also claimed that his right to remain silent was violated because, during his interrogation, he repeatedly expressed his desire to go home but questioning continued. He also claimed that "the detective persisted in efforts to wear down my resistance and make me change my mind with constant questioning." He claimed that he was questioned for several hours while handcuffed and wearing no socks or shoes. His mother attended his interrogation but "became more and more aggressive and hostile *** issuing many threats, vile profanity, and promises." The police made "the offer of leniency" including by observing that at age 15 he was still a minor. He claimed that his confession was not voluntary because he was a juvenile, was intoxicated from alcohol and marijuana, and was threatened by his mother and "mentally coerc[ed]" by the detectives.

¶ 14 Defendant also claimed that counsel was ineffective for not presenting exculpatory evidence that defendant's DNA was excluded, and a codefendant's DNA could not be excluded, as being present on the murder weapon. He claimed that he would not have pled guilty had he

known of that evidence but counsel never informed him of it, and that counsel had told him that "all of the evidence is against" him. He claimed that counsel was ineffective for not filing a motion to suppress his statements, for telling him that codefendants had agreed to testify against him "when they didn't," and for threatening to withdraw as counsel if he did not plead guilty "because of all 'the evidence against you.' " He claimed actual innocence based on the DNA evidence and the involuntary nature of his confession. He claimed that his MSR term extends his sentence beyond the agreed 30 years. Lastly, he claimed that the statute by which his case was automatically transferred to criminal court (rather than juvenile court) is unconstitutional.

¶ 15    Attached to the petition was defendant's affidavit generally verifying the allegations of the petition. He did not state in his petition or affidavit how he knew that codefendants had not agreed to testify against him, nor did he attach an affidavit from any codefendant. The only other affidavits attached were from Nicole Brown. Nicole averred that she knew defendant was intoxicated when she saw him at the police station, recognizing the change in his mannerisms and speech. She asked the detectives for a drug test but they did not acknowledge her request. Defendant was "shaking cold with no shoes or socks on, [and] was handcuffed to a chair." Nicole averred that she was attending court for defendant's case and asked defendant's counsel for his opinion of the case. Counsel told her that, if defendant lost, he faced a prison sentence of 45 years to life. He told her that Lamb and Smart had agreed to testify against defendant, and he did not tell her that defendant would have to testify against Pettye. Counsel advised Nicole that defendant should "take the plea."

¶ 16    Also attached to the petition were selected portions[1] of the transcript of defendant's August 2011 interrogation, in which defendant answered questions about the events of the night in question. Throughout the transcript, defendant's mother exhorted him, sometimes in vulgar language, to be forthcoming and tell the truth rather than face imprisonment for someone else's crime. Defendant's mother threatened him multiple times, and at one point the detective questioning defendant asked her to "stop threatening him." In the transcript, defendant at first implicated Pettye as the shooter and denied knowing what Pettye intended to do, but the detective and defendant's mother told him that they did not believe him. Defendant then admitted that he knew Pettye had set out to kill a Gangster Disciples member. When the detective and defendant's mother again doubted his account and urged him to tell the truth, defendant repeated his account that Pettye shot Wilson. When the detective and defendant's mother again doubted his account, he offered to testify against Pettye. He then repeatedly expressed his desire to go home and insisted that he had given a true and full account. When defendant's mother asked him if Pettye had threatened him, defendant said that he already knew that the others were going to blame him. The detective and defendant's mother again exhorted him to tell the truth. Subsequent pages of the transcript are absent, until defendant and his mother are marking and initialing a photograph. The transcript ends with defendant asking how long a sentence he faces and the detective replying "Can't say, you're 15 years old, I don't know" and "Tell the truth (inaudible) judge I don't know. (inaudible) show you some leniency."

---

[1] The portion attached to the petition begins on page 25 and ends at page 36, recommences at page 41 and ends at page 56, and concludes with pages 67-68.

¶ 17    Lastly, attached to the petition were copies of a court order and police and laboratory reports related to testing DNA from defendant and three redacted[2] codefendants or suspects against DNA from a shotgun.  The results of the testing, reported in February 2012, were that defendant and two redacted suspects did not contribute to the DNA on the shotgun and a redacted suspect could not be excluded as a source of the DNA on the shotgun.

¶ 18    The trial court summarily dismissed the petition in October 2015.  Regarding the right to remain silent, the court noted that defendant was relying upon *People v. Jackson*, 180 Ill. App. 3d 78 (1989), where this court found that a defendant invoked that right by saying that she wanted to stop talking and go home. However, defendant merely said that he wanted to go home, which the court found to not be an unequivocal invocation of the right to remain silent.  The court found that defendant's confession was voluntary, noting that his mother was present, finding that handcuffing him was not unreasonable given the nature of the crimes at issue, and finding from the transcript of the interrogation that the officer engaged in no "abusive or coercive" behavior, made no promises or threats, and used no "trickery."  As to counsel being ineffective for not filing a motion to suppress, the court noted that counsel filed such a motion. As to the claim that defendant's plea resulted from counsel's erroneous advice and threat to withdraw, the court found that counsel "was being honest with" defendant that his case "was difficult" and noted that defendant denied in the plea hearing that counsel pressured him into pleading guilty.  The court found no legal merit in defendant's MSR claim or challenge to the automatic transfer statute, noting that the latter had been found constitutional by this court. Lastly, as to defendant's actual-innocence claim, the court found that the DNA report was

_____

[2] Every instance of the names of the codefendants or suspects other than defendant in the attached order and reports is obscured with a black box.

available five months before his plea and was not exonerative because the absence of defendant's DNA on the fatal weapon did not "absolve" his statements admitting to participating in the shooting.

¶ 19 On appeal, defendant contends that his petition stated various arguable claims and should not have been summarily dismissed. He contends that his plea was involuntary based on two legal theories: (1) counsel rendered ineffective assistance in misinforming him of the strength of the State's case and in threatening to withdraw if he did not plead guilty; (2) his plea was based upon his coerced or involuntary confession. Defendant also contended he was deprived of the benefit of the bargain on his negotiated plea by not being duly admonished regarding MSR.

¶ 20 Defendant's supplemental petition added as a theory in support of his claim his plea was involuntary an argument that he pleaded guilty under threat of a now unconstitutional sentence of up to 60 years' imprisonment without consideration of his youth and its attendant circumstances. The State responded defendant waived that argument as untimely and that it lacked substantive merit.

¶ 21                                    ANALYSIS

¶ 22 A postconviction petition may be summarily dismissed within 90 days of its filing if "the court determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2016). A petition may be summarily dismissed if it has no arguable basis in law or fact because it relies on an indisputably meritless legal theory or a fanciful factual allegation, or it is substantially incomplete because it does not include objective or independent corroboration of its allegations. *People v. Allen*, 2015 IL 113135, ¶¶ 24-26. Regarding the latter, a defendant raising claims outside the record must either attach evidence beyond his own verification of the petition, such as affidavits, supporting those claims or explain why such evidence is not attached. 725

ILCS 5/122-2 (West 2014); *Allen*, ¶¶ 26-27. At the first stage, documented factual allegations are construed liberally and accepted as true unless affirmatively refuted by the record. *People v. Brown*, 2017 IL 121681, ¶ 27; *Allen*, ¶¶ 25-26. We review *de novo* the summary dismissal of a postconviction petition. *Allen*, ¶ 19.

¶ 23    Defendant initially argued on appeal that his confession was coerced and would have been suppressed because of (1) his age, (2) his lack of experience with law enforcement, (3) the physical conditions of his interrogation, and (4) his intoxication. He then argued that the conduct of his mother supports his claim his statement was coerced. As noted above, after this court issued its initial Order affirming the trial court's summary dismissal of defendant's *pro se* postconviction petition defendant filed a petition for rehearing (PFR) pursuant to Illinois Supreme Court Rule 367 (eff. Nov. 1, 2017). While defendant's PFR was pending in this court defendant filed a motion to allow supplemental briefing on the PFR to cite additional authority in support of an additional theory in support of his claim that his plea was involuntary. Specifically defendant sought to cite *People v. Parker*, 2019 IL App (5th) 150192, a case which was decided while defendant's petition was pending, to argue that defendant's plea was involuntary because it was based on the threat of a now-unconstitutional sentence; that is, the possibility of 60 years' imprisonment without consideration of the attendant circumstances of defendant's youth as required by the United States Supreme Court's decision in *Miller v. Alabama*, 567 U.S. 460 (2012) and our supreme court's decisions in *People v. Reyes*, 2016 IL 119271 and *People v. Buffer*, 2019 IL 122327.

¶ 24    In *Miller*, the United States Supreme Court held "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders." *Miller*, 567 U.S. at 479. Courts must now "take into account how children are

different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id.* at 480. The court noted that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon." *Id.* at 479. In *Reyes*, our supreme court held that Miller applies to "a mandatory, *de facto* life-without-parole sentence." *Reyes*, 2016 IL 119271, ¶ 10. A "*de facto* life-without-parole sentence" is one under which the defendant "will most certainly not live long enough to ever become eligible for release" or an "unsurvivable prison term." *Id.* ¶¶ 9-10. Finally, in *Buffer*, our supreme court held that for juveniles, "a prison sentence of [more than] 40 years *** constitute[s] a *de facto* life sentence in violation of the eighth amendment." *Buffer*, 2019 IL 122327, ¶ 41.

¶ 25    Defendant asserts he should now be allowed to argue in support of his postconviction petition that the combination of these authorities renders his plea involuntary because defendant pleaded guilty under the threat of an unconstitutional sentence. Again, that threatened sentence was more than 40 years' imprisonment absent any consideration of defendant's "youth and its attendant characteristics." Stated differently, defendant argues he pleaded guilty based on a threatened sentence of up to 60 years in prison regardless of defendant's "age at the time of the offense, *** particular immaturity, impetuosity, *** failure to appreciate risks and consequences; ***[his] family and home environment; *** peer pressures that may have affected him; *** incompetence, *** inability to deal with police [or] "his incapacity to assist his own attorneys." See *People v. Holman*, 2017 IL 120655, ¶ 46. See also 730 ILCS 5/2-4.5-105(a) (West 2018). Defendant now asserts he would not have pleaded guilty in exchange for a 30-year sentence had he known that 40 years' imprisonment was the maximum the court could impose unless the court found that defendant's conduct, at 16-years old, "showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation."

*People v. Holman*, 2017 IL 120655, ¶ 46. Therefore, defendant argues, he has "stated the gist of a claim that he was subjected to an unfair plea proceeding under *Miller* and *Buffer*" and the trial court's judgment summarily reversing his postconviction petition should be reversed and the cause remanded for second stage postconviction proceedings.

¶ 26    The State argues defendant is too late. The State does not dispute that defendant's *pro se* postconviction petition argued his plea was involuntary (for different reasons) but asserts that defendant had to argue the involuntariness of his plea based specifically on "the threat of a now unconstitutional *de facto* life sentence" either in his initial *pro se* petition or in defendant's opening brief on appeal from the summary dismissal of that petition (unless the State's response brief invited the argument—which it contends did not). In support of that position the State argues "that where [defendant] did not challenge the statutory sentencing range as unconstitutional in his [postconviction] petition, his claim cannot be raised" in proceedings on a petition for rehearing (1) under the Post-Conviction Hearing Act or (2) Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018).

¶ 27    On the merits of defendant's claim the State argues defendant has failed to "set forth the gist of a constitutional claim where his sentence was well within constitutional guidelines." The State argues defendant "cannot show that he received a life sentence *** , natural or *de facto*, where his aggregate sentence was less than 40 years' imprisonment;" therefore, defendant's sentence does not violate *Buffer*. Finally, the State argues that *Buffer* "is totally unrelated to the trial court's accurately informing [defendant] that he was subject to a potential 20 to 60-year sentence for first degree murder."

¶ 28    In support of his position that he can raise this argument defendant relied upon the decision in *Parker*, which defendant contends involves a "nearly identical" claim to his own. In

*Parker*, the appellate court reversed the trial court's judgment denying the defendant leave to file a successive postconviction petition. *Parker*, 2019 IL App (5th) 150192, ¶ 1. In *Parker* the State charged a 16-year old defendant with first degree murder; and the defendant in *Parker*, like defendant here, entered a negotiated plea of guilty. *Id.* ¶¶ 2-3. The State in *Parker* agreed to ask for a sentence of imprisonment not to exceed 50 years. *Id.* ¶ 3. At the plea hearing the trial court admonished the defendant in *Parker* that "the possible sentencing range was 20 to 60 years' imprisonment or, under certain circumstances, life imprisonment." *Id.* Then again at the sentencing hearing the trial court in *Parker* advised the defendant that "he could have been sentenced to life imprisonment or 20 to 60 years' imprisonment." *Id.* ¶ 4. The trial court sentenced the defendant to 35 years in prison. *Id.*

¶ 29    The *Parker* defendant subsequently filed a motion for leave to withdraw his guilty plea "contending that he entered his guilty plea without sufficient understanding and contemplation of the serious nature of the consequences of entering a plea, that he felt pressured to enter his guilty plea by the advice that he received from his parents, and that his counsel briefly discussed the plea offer with him in the hallway of the courthouse while he was shackled and under guard, thus allowing him no privacy or sufficient time to discuss the offer;" but the defendant withdrew that motion at the hearing thereon after being advised by the trial court that withdrawing his guilty plea could result in a sentence of 20 to 80 years' or life imprisonment after a trial. *Id.* ¶ 5. "Almost nine years later *** the defendant filed a *pro se* petition for postconviction relief [arguing, in pertinent par, that] *** he was coerced into entering a guilty plea by his counsel and parents where his plea was based on a misrepresentation of the possible sentencing range." *Id.* ¶ 7. The appellate court affirmed the dismissal of the defendant's initial postconviction petition at

the second stage of postconviction proceedings on the grounds the initial petition was not timely

filed. *Id.* ¶ 8.

¶ 30      Then, 14 years after the trial court denied the defendant's motion to reconsider the

sentence, the defendant filed a motion for leave to file a successive postconviction petition

arguing in part that his sentence, "without consideration of his youth and its attendant

characteristics, amounted to a *de facto* life sentence in violation of the eighth amendment *** as

forth in *** *Miller*." *Id.* ¶ 9.  The trial court denied the defendant's motion for leave to file a

successive postconviction petition.  *Id.*

> "With regard to the *Miller* claim, the court noted that *Miller* stood for the
>
> proposition that a mandatory life sentence for a juvenile, where a trial court had
>
> no discretion to consider mitigating factors, violated the eighth amendment.  The
>
> court found that *Miller* was inapplicable because the defendant did not receive a
>
> mandatory life sentence.  The court further concluded that the defendant's claim
>
> that his 35-year sentence amounted to a *de facto* life sentence was frivolous
>
> because Illinois courts had upheld life sentences for juveniles as constitutional
>
> where the trial court had discretion to consider mitigating factors.  [Citation.]  In
>
> addition, the court noted that the defendant's age was considered as a mitigating
>
> factor at his sentencing."  *Id.*

The defendant appealed the denial of his motion for leave to file a successive postconviction

petition.  *Id.*

¶ 31      On appeal the defendant, similarly to defendant here, filed a motion for leave to cite

additional authority.  In *Parker*, however, the defendant sought and was granted leave to cite

*Buffer* as additional authority, which the appellate court found "dispositive to an issue the defendant raised on appeal.".  *Id.* ¶ 10.  In *Parker*,

> "the defendant concede[d] that *Buffer* is adverse authority for his argument that his 35-year prison sentence constituted a *de facto* life sentence.  However, he contends that *Buffer* supports his related argument[] that he should be allowed to challenge his guilty plea through a successive postconviction petition because he would not have pled guilty if he had understood the implications of the eighth amendment, [and] that he should be entitled to a new sentencing hearing where the trial court failed to consider his youth and its attendant characteristics when imposing the sentence."  *Id.* ¶ 16.

The defendant further argued that

> "[h]e asserted that he met the cause and prejudice test to file a successive postconviction petition because Reyes and *Buffer* had not been decided when he filed his initial postconviction petition and the application of *Buffer* changed the applicable sentencing range and eliminated his justifications for entering a guilty plea—*i.e.*, to avoid a natural-life sentence and for the State's recommendation to cap the sentence at 50 years—*as neither sentence was constitutionally available absent evidence of incorrigibility*."  (Emphasis added.)  *Id.*

¶ 32    The *Parker* court found the defendant in that case had demonstrated cause because *Reyes* and *Buffer* had not been decided when he filed his initial postconviction petition and that the defendant had demonstrated prejudice because "his guilty plea was influenced by the State's sentencing recommendation and the repeated admonishments that he could receive a life sentence."  *Id.* ¶ 18.  As to the latter, the defendant in *Parker* argued, in part, that "he would not

have pled guilty *** in exchange for a sentencing cap of 50 years if the guidelines set forth in *Buffer* were established at the time that he entered his guilty plea." *Id.* The defendant further argued that "the State's offered sentencing cap of 50 years provided little to no incentive for him to plead guilty, as a 50-year sentence would constitute a *de facto* life sentence under *Buffer*." *Id.* The *Parker* court found both arguments persuasive and reversed the trial court's judgment denying the defendant's motion for leave to file a successive postconviction petition. *Id.*

¶ 33    In this case, defendant argues "the same result reached by the court in *Parker* is mandates in this case." Defendant argues the same threat of a sentence in excess of 40 years was present in this case—regardless of whether the trial court admonished him he could receive life imprisonment or 60 years' imprisonment—and that he too would not have pleaded guilty had he known of the *Buffer* guidelines at the time of his plea. On the merits of defendant's claim, we agree defendant has stated the gist of a constitutional claim that his plea was involuntary.

> "The Post-Conviction Hearing Act (the Act) (725 ILCS 5/122-1 (West
> 2014)) provides a remedy to criminal defendants who have had substantial
> violations of their constitutional rights during their criminal trials. [Citation.] A
> postconviction proceeding is not an appeal per se, but a collateral attack upon a
> final judgment. [Citation.] A *pro se* petitioner is entitled to an evidentiary
> hearing on his postconviction petition only when he presents the 'gist' of a
> meritorious constitutional claim ([citation]) and the record or accompanying
> affidavits support the allegations in the petition ([citation]). The 'gist' standard
> represents a 'low threshold,' and during the summary dismissal stage the
> allegations in the petition must be taken as true and liberally construed.
> [Citation.] A petition may be summarily dismissed as frivolous or patently

without merit only if it has no arguable basis in either law or fact. [Citation.] Whether the allegations in the petition are sufficient to avert summary dismissal is a legal inquiry, subject to de novo review. [Citation.]" *People v. Ramirez-Lucas*, 2017 IL App (2d) 150156, ¶ 40.

¶ 34 "A misapprehension as to sentencing alternatives may render a guilty plea involuntary if the defendant is actually unaware of the possible sentences. *People v. Woods*, 134 Ill. App. 3d 294, 300 (1985).

> "Generally, due process requires that in order for a defendant to knowingly and voluntarily plead guilty, a defendant must be advised of the direct consequences of a guilty plea. [Citation.] As we have previously explained, a direct consequence of a guilty plea is one which has a definite, immediate and largely automatic effect on the range of a defendant's sentence. [Citation.] A trial court's obligation to ensure that a defendant understands the direct consequences of his plea traditionally encompasses those consequences that affect the defendant's sentence and other punishment that the circuit court may impose. [Citation.]" *People v. Hughes*, 2012 IL 112817, ¶ 35.

¶ 35 We agree with the *Parker* court to the extent we find in this case defendant stated the gist of a claim his plea was influenced by the State's sentencing recommendation, which would constitute a *de facto* life sentence under *Buffer*" without first complying with the requirements of the eighth amendment as stated in the *Miller* line of cases. *Parker*, 2019 IL App (5th) 150192, ¶ 18. The State argues the trial court's admonishment that defendant faced up to 60 years' imprisonment "did not improperly induce his plea of guilty." The State offers no factual support for its contention. Regardless, "[a] defendant bears the burden of demonstrating any alleged

misunderstanding which would render the guilty plea involuntary." *Woods*, 134 Ill. App. 3d at 300. And, "a defendant at the first stage need only present a limited amount of detail in the petition. [Citations.] *** [W]e have required only that a *pro se* defendant allege enough facts to make out a claim that is *arguably* constitutional for purposes of invoking the Act." (Emphasis added.) *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). In this case, we find defendant has stated an arguable claim he would not have pleaded guilty had he "understood the implications of the eighth amendment" (*Parker*, 2019 IL App (5th) 150192, ¶ 16) in sentencing him, and the State does not dispute that the trial court did not admonish defendant of those requirements (because they had not yet been established—although our supreme court has held they apply retroactively).

¶ 36    The State's argument that the sentence "was well within constitutional guidelines" misses the mark. "In *Boykin v. Alabama*, 395 U.S. 238 (1969), the United States Supreme Court addressed the issue of a defendant's need to understand the consequences of his entering a guilty plea. In *Boykin*, the Court held that it is a violation of due process for the court to accept a guilty plea without an affirmative showing that the defendant voluntarily and intelligently entered his plea of guilty." *People v. St. Pierre*, 146 Ill. 2d 494, 506 (1992). "If a defendant's guilty plea is not voluntary and knowing, it has been obtained in violation of due process and, therefore, is void." (Internal quotation marks and citation omitted.) *People v. Castano*, 392 Ill. App. 3d 956, 958 (2009). The issue here is the defendant's knowledge of the consequences of the guilty plea in making the decision whether or not to enter it, not whether the sentence itself is constitutional. Specifically, the consequence at issue, which may have led defendant to plead, is a 60-year prison sentence without first considering defendant's youth, which would be unconstitutional. Similarly, then, the State's arguments that *Buffer* is unrelated to the trial court's informing

defendant that he was subject to a potential 20 to 60-year sentence for first degree murder and that the sentence does not violate *Buffer* because defendant "cannot show that he received a life sentence ***, natural or *de facto*, where his aggregate sentence was less than 40 years' imprisonment" and also fail.

¶ 37     Substantive arguments aside, the State argues defendant's guilty plea "waives all nonjurisdictional errors or irregularities, including constitutional ones."  In support of that argument the State relies on *People v. Townsell*, 209 Ill. 2d 543, 545 (2004).  However, in *Townsell* our supreme court explained that "[i]n relation to a guilty plea *** 'waiver' refers to the ' "voluntary relinquishment of a known right." ' [Citation.]"  *Townsell*, 209 Ill. 2d at 547 (citing *Hill v. Cowan*, 202 Ill. 2d 151, 158-59 (2002))  In *Hill*, our supreme court also wrote, in the context of the rule upon which the State relies, that it used "the term waiver to signify the 'voluntary relinquishment of a known right,' not as a shorthand for 'procedural default by failing to bring an error to the attention of the trial court.' "  *Hill*, 202 Ill. 2d at 158-59.  Defendant's rights under the eighth amendment in this context were not known at the time he pleaded guilty; therefore, he could not have voluntarily relinquished them.  See also *People v. Palmer*, 336 Ill. App. 3d 821, 826 (2003) ("when a defendant inadvertently fails to raise the issue of double jeopardy when pleading guilty, the waiver is more akin to a procedural default than a voluntary relinquishment of a known right.  The distinction between the relinquishment of a known right and a procedural default leads us to reject the analysis in *Townsell*.")

¶ 38     In response to the State's argument defendant failed to raise this particular argument at the right time, defendant argues this court must give his petition a liberal construction which would result in finding that the claim is contained within his argument in the postconviction petition and that this court has jurisdiction to hear it.  Defendant also argues this court should not

consider the argument waived under Rule 341(h)(7) under *People v. Kaczmarek*, 207 Ill. 2d 288, 301-04 (2003). Defendant correctly argues that our supreme court has stated a "requirement that a *pro se* petition be given a liberal construction. Where defendants are acting *pro se*, courts should review their petitions "with a lenient eye, allowing borderline cases to proceed." *People v. Hodges*, 234 Ill. 2d 1, 21 (2009). "[A] *pro se* petition seeking postconviction relief under the Act for a denial of constitutional rights may be summarily dismissed as frivolous or patently without merit *only* if the petition has no arguable basis either in law or in fact." (Emphasis added.) *Id.* at 11-12. The State has failed to demonstrate that defendant's claim lacks arguable basis in law or fact. See *Hodges*, 234 Ill. 2dat 16 (A petition which lacks an arguable basis either in law or in fact is one which is based on an indisputably meritless legal theory or a fanciful factual allegation."). Under the "liberal construction" standard, we find that defendant's initial claim that his plea was involuntary is sufficient to allow consideration of the argument that the reason his plea was involuntary was due to improper admonishments as to the potential sentence he faced as a juvenile and a bargain that offered "little to no incentive for him to plead guilty."

¶ 39    We further find defendant has not forfeited the issue under Rule 341(h)(7). *Kaczmarek* does provide an example, as it were, of our supreme court allowing argument that "change[s] with evolving *** jurisprudence" *(Kaczmarek*, 207 Ill. 2d at 300), but it is not necessary to our holding. "[W]e have previously noted that Rule 341(e)(7) 'states an admonition to the parties, not a limitation upon the jurisdiction of the reviewing court.' [Citation.] Moreover, the 'responsibility of a reviewing court for a just result and for the maintenance of a sound and uniform body of precedent may sometimes override the considerations of waiver that stem from the adversarial nature of our system.' [Citation.]" *People v. Pecor*, 153 Ill. 2d 109, 116-17 (1992). Finally, we find sufficient grounds to excuse defendant's waiver of this specific

argument where *Parker* was not decided at the time of our original decision and in light of the congruity between the facts of each case. See also *People v. Clifton*, 321 Ill. App. 3d 707, 728 (2000), *vacated on other grounds*, (relaxing Rule 341(h)(7) waiver rule where codefendant received relief on same ground), *People v. Bass*, 2019 IL App (1st) 160640, ¶ 106.

¶ 40 Having determined that defendant's postconviction states the gist of a constitutional claim his plea was involuntary we no longer have reason to address the other issues raised in the petition.

> "Under the plain language of the Act, in cases such as this, the circuit court must docket the entire petition, appoint counsel, if the petitioner is so entitled, and continue the matter for further proceedings in accordance with sections 122-4 through 122-6. The State is then given the opportunity to answer or otherwise plead." *People v. Rivera*, 198 Ill. 2d 364, 371 (2001).

¶ 41 Accordingly, the judgment of the circuit court of Cook County is reversed and the cause is remanded for further proceedings.

¶ 42                                   CONCLUSION

¶ 43 The judgment of the circuit court is reversed and the cause remanded for further proceedings.

¶ 44 Reversed and remanded.