2021 IL App (1st) 181160-U

SIXTH DIVISION
August 20, 2021

No. 1-18-1160

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 09 CR 3669 |
| | ) | |
| JOHNATHAN L. FRANKLIN, | ) | Honorable |
| | ) | Nicholas R. Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justice Connors concurred in the judgment.
Justice Harris dissented.

**ORDER**

¶ 1    *Held*: The circuit court's summary dismissal of defendant's postconviction petition is reversed where defendant presented the gist of a claim in his petition that his guilty plea was not knowing and voluntary because it was induced by the prospect of an unconstitutional natural life sentence.

¶ 2    Pursuant to a 2012 negotiated guilty plea, defendant Johnathan Franklin was convicted of attempted first degree murder and sentenced to 30 years in prison. Mr. Franklin now appeals from the summary dismissal of his 2017 *pro se* postconviction petition, contending that he stated the gist of a meritorious constitutional claim that his guilty plea was not knowing and voluntary

because it was induced by the prospect of an unconstitutional natural life sentence. For the reasons stated below, we agree and reverse the dismissal of his claim.

¶ 3                                    I. BACKGROUND

¶ 4     Mr. Franklin was born on August 17, 1978. The crime to which he pleaded guilty occurred on November 13, 1995, when he was 17 years old. However, he was not charged until 2009, when he was already in jail on an unrelated felony murder charge in the state of Wisconsin. In the case that is before this court, Mr. Franklin was charged with first degree murder, attempted first degree murder, and aggravated discharge of a firearm for allegedly shooting at a car driven by Russell Robinson, in which Cassandra Jordan, a passenger, was fatally shot.

¶ 5     On March 23, 2012, the State made a plea offer of 30 years in prison for attempted first degree murder in exchange for dismissal of all other charges. In his discussion with the circuit court on the guilty plea, the following exchange occurred:

"THE COURT: Did anyone threaten you or promise you anything to make you plead guilty today?

MR. FRANKLIN: No.

THE COURT: You're pleading guilty of your own free will?

MR. FRANKLIN: I feel like I don't have a choice.

THE COURT: You can do it because you want to do it because you feel like—

MR. FRANKLIN: I don't want to have natural-life.

THE COURT: You can do it to avoid natural-life, but are you doing it of your own free will?

MR. FRANKLIN: Yes."

¶ 6     The State provided a factual basis for the plea: Mr. Robinson had identified Mr. Franklin

as one of the men who shot at his car and killed Ms. Jordan, and another witness would testify that Mr. Franklin admitted to him on the day after the shooting that he participated in firing at the car.

¶ 7    The court advised Mr. Franklin that the sentence would be concurrent to a sentence he was already serving on the felony murder charge in Wisconsin and that he faced 6 to 30 years in prison for the attempted first degree murder including three years of mandatory supervised release (MSR) and a possible fine. Mr. Franklin waived his rights to a bench trial, a jury trial, and a presentencing investigation (PSI). The court asked if there was anything else in aggravation or mitigation, and neither party added anything. Pursuant to the plea, the court found Mr. Franklin guilty of attempted first degree murder and sentenced him to 30 years in prison. He was then admonished of his appeal rights.

¶ 8    Mr. Franklin filed a direct appeal without first filing a motion to withdraw his plea, and we dismissed the appeal. *People v. Franklin*, 2014 IL App (1st) 121625-U, ¶¶ 7, 25. We found that the circuit court substantially admonished Mr. Franklin of his appellate rights following a negotiated guilty plea so that the admonishment exception to the requirement of a timely postplea motion did not apply. *Id*. ¶¶ 10-16. We did not address the merits of his claim "that he felt pressured to plead guilty to avoid a natural-life sentence, which, in light of *Miller v. Alabama*, [citation], decided three months after Mr. Franklin's plea, would have been unconstitutional because Mr. Franklin was under 18 years old at the time of the offense." *Id*. ¶ 17 (citing *Miller*, 567 U.S. 460 (2012)). We did grant Mr. Franklin's request for a correction of his mittimus to reflect that the sentence would be concurrent with Mr. Franklin's 50-year prison sentence for the felony murder conviction in Wisconsin. *Id*. ¶ 24.

¶ 9    Mr. Franklin's October 2017 *pro se* postconviction petition and accompanying memorandum set out claims that he "was denied his right to the effective assistance of appellate

counsel who failed to raise ineffective assistance of trial counsel that did not raise meritorious issues." He then laid out several issues including the delay in bringing him to trial, that he was denied his "right to a juvenile adjudication" due to the delay, and that "[t]he judge might would've [*sic*] found defendant adolescent brain incapable of adult rationale." The memorandum in support of the petition began with "[t]herefore, defendant is prejudiced by the delayed prosecution resulting in involuntarily, unknowingly and unwillingly entering guilty plea."

¶ 10    Neither the petition nor the attached memorandum of law cites *Miller*. However, included with the petition in the record is an undated letter from Mr. Franklin to the clerk of the circuit court requesting forms to file a postconviction petition. The letter stated Mr. Franklin's belief that he had a valid claim under *Miller*, which he characterized as "ruling that age 18 under shall be eligible for parole after 15 years [of] incarceration." He also stated that the delay in prosecution deprived him of a juvenile adjudication and caused an "obstruction of rehabilitation."

¶ 11    The circuit court summarily dismissed the petition in January 2018. In its written order, the circuit court listed Mr. Franklin's claims as follows: a *Brady* violation, voluntariness of guilty plea, speedy trial and confrontation, actual innocence, and ineffective assistance of appellate counsel. This appeal followed.

¶ 12    On appeal, counsel initially moved to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). In his response in this court, Mr. Franklin filed two documents. The first was titled a "Motion for Leave to File Successive Post-Conviction Petition" and the second "Appellant's Explanation for Appeal." This court viewed these documents as his response to the *Finley* motion. In the first document he argued that, under *People v. Buffer*, 2019 IL 122327, he could receive only 40 years' imprisonment because he was a juvenile at the time of the offense. In the second document he cited *Miller*, 567 U.S. 460, and again cited *Buffer*, arguing "settled law

stipulates that threat of a natural life sentence when defendant could not receive natural life constitutes unknowingly & understandingly entered plea of guilty." We denied counsel's motion to withdraw, and the parties briefed the issue that is before the court.

¶ 13                                    II. JURISDICTION

¶ 14    Mr. Franklin's petition was dismissed on January 22, 2018, and this court granted Mr. Franklin leave to file a late notice of appeal on June 20, 2018. We have jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 606 (eff. March 12, 2021) and 651 (eff. Dec. 1, 1984), governing criminal appeals and appeals from final judgments in postconviction proceedings cases.

¶ 15                                    III. ANALYSIS

¶ 16    The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a framework for an incarcerated individual to collaterally attack his or her conviction by establishing the substantial denial of a constitutional right in the trial or sentencing that resulted in that conviction. 725 ILCS 5/122-1(a)(1) (West 2018). Claims are limited to those that were not, and could not have been, previously litigated. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010).

¶ 17    Proceedings under the Act occur in three stages. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). At the first stage, the circuit court determines, without input from the State, whether a petition is frivolous or patently without merit. *Id.*; 725 ILCS 5/122-2.1(a)(2) (West 2018). At the second stage, the court appoints counsel to represent the defendant and, if necessary, to file an amended petition; at this stage, the State must either move to dismiss or answer the petition. *Gaultney*, 174 Ill. 2d at 418; 725 ILCS 5/122-4, 122-5 (West 2018). Only if the petition and accompanying documentation make a substantial showing of a constitutional violation does the defendant then proceed to the third stage, an evidentiary hearing on the merits. *People v. Silagy*,

116 Ill. 2d 357, 365 (1987); 725 ILCS 5/122-6 (West 2018).

¶ 18     Mr. Franklin's petition was dismissed at the first stage. Our supreme court has made clear that to survive first-stage scrutiny, a petition need only state the "gist" of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). Formal legal argument and citation to authority are not required (*id.*), and all well-pleaded facts that are not positively rebutted by the record must be taken as true (*People v. Romero*, 2015 IL App (1st) 140205, ¶ 26). A petition may be summarily dismissed as "frivolous or patently without merit" only when it has "no arguable basis either in law or in fact"—*i.e.*, where the petitioner's claims rely "on an indisputably meritless legal theory or a fanciful factual allegation." (Internal quotation marks omitted.) *People v. Boykins*, 2017 IL 121365, ¶ 9. We review the summary dismissal of a postconviction petition *de novo*. *People v. Brown*, 236 Ill. 2d 175, 184 (2010).

¶ 19     Because most postconviction petitions are drafted by *pro se* litigants, a petition at the first stage is required only to include a limited amount of detail and need not present formal legal arguments or citations. *People v. Hodges*, 234 Ill. 2d 1, 9-10, (2017). And the allegations in a *pro se* petition should "be given liberal construction" in petitioner's favor. *Id.* at 21. If it is a "borderline" question as to whether a *pro se* petition raised a claim argued on appeal, the petition should advance to the second stage of proceedings. *Id.*

¶ 20     On appeal, Mr. Franklin contends that his postconviction petition should not have been summarily dismissed because he presented an at least arguably meritorious claim that his guilty plea was not knowing and voluntary because it was induced by the prospect of an unconstitutional life sentence. The underpinning for this argument is the evolving case law, which culminated most recently in our supreme court's decision in *People v. Buffer*, 2019 IL 122327, finding that a defendant who was under 18 at the time of the crime could not receive a sentence in excess of 40

years, unless the court had properly considered the defendant's youth and attendant characteristics. *Id.* ¶¶ 40-47. *Buffer* followed and built upon a line of cases in this state and from the United States Supreme Court that rest upon that Court's decision in *Miller*, 567 U.S. 460, that a mandatory life sentence for a juvenile violated the eighth amendment. As the Court recognized there, "children are constitutionally different from adults for purposes of sentencing." *Id.* at 471.

¶ 21 The State responds that Mr. Franklin forfeited his claim by not raising it in his petition and also argues that the claim is not of arguable merit. We deal with the State's two arguments in support of dismissal in turn.

¶ 22                              A. Mr. Franklin Did Not Forfeit This Claim

¶ 23 We reject the State's argument that Mr. Franklin's claim was forfeited because it was not properly raised in Mr. Franklin's *pro se* petition. Mr. Franklin clearly raised a claim that his guilty plea was unknowing and involuntary in his postconviction petition and the accompanying memoranda. The circuit court specifically listed the voluntariness of the plea as one of the issues raised in the petition. Mr. Franklin also claimed that he should have been tried as a juvenile where his youth would have received due consideration in sentencing and referenced his "adolescent brain." We acknowledge that in the petition, Mr. Franklin focused his argument that the plea was involuntary on the State's State undue delay in waiting over 12 years to charge him with this crime. But a party—even one who is represented—forfeits claims, not arguments in support of those claims. *Brunton v. Kruger*, 2015 IL 117663, ¶ 76. As our supreme court made clear in *Brunton*, "[w]e require parties to preserve issues or claims for appeal; we do not require them to limit their arguments here to the same arguments that were made below." *Id.*

¶ 24 Mr. Franklin clearly made a claim that his guilty plea was not knowing and voluntary in his postconviction petition. Elsewhere, in the accompanying memorandum, he argued that his

youth should have been considered in sentencing. In light of our duty to liberally construe a *pro se* petition, we cannot view this as a forfeiture of the claim in his postconviction petition that his plea was involuntary or as a reason that we should not consider the arguments that Mr. Franklin is making on appeal in support of that claim.

¶ 25    We find further support for our liberal reading of Mr. Franklin's petition in the fact that Mr. Franklin specifically cited *Miller* in the undated letter that appears from the record to be an attachment to Mr. Franklin's petition. Although it is unclear whether the letter was actually attached to the petition, and counsel for Mr. Franklin has not relied on it in this court, we consider this letter as clarification of the claims that Mr. Franklin was making in his petition. Mr. Franklin also expressly raised the argument that his plea was unknowing and involuntary because of *Miller* and *Buffer* in his response to the *Finley* motion. It is true, as the State argues, that a claim cannot be raised for the first time on appeal, including in a response to a *Finley* motion. However, we can and do view the *Finley* response as material that elucidates the contents of the postconviction petition.

¶ 26    Considering all of the above, we decline to find that Mr. Franklin forfeited his claim that his plea was not voluntary or that he is precluded from raising an argument in support of that claim that the plea was induced by his fear of life sentence that would have been unconstitutional under *Miller.*

¶ 27              B. Mr. Franklin Has Stated the Gist of a Constitutional Claim

¶ 28    Mr. Franklin's argument on appeal is that his guilty plea was involuntary and unknowing because it was induced by the possibility of a sentence that was subsequently found to be unconstitutional for juveniles, absent specific considerations and circumstances. Mr. Franklin alleged that he pleaded guilty and accepted the offered deal because, as he said directly in his

colloquy with the circuit court, he did not want a sentence of natural life in prison which was, at the time he pled guilty in March 2012, a likely sentence for murder. Several months after Mr. Franklin's guilty plea however, in June 2012, the United States Supreme Court, in *Miller*, held that such a sentence should be "uncommon" and reserved for juveniles whose crimes reflect "irreparable corruption." (Internal quotation marks omitted.) 567 U.S. at 479-80.

¶ 29    In support of the merits of this argument, Mr. Franklin relies on *People v. Parker*, 2019 IL App (5th) 150192, ¶ 18, and several decisions from this district that follow that case. In *Parker*, this court held that a defendant could file a successive postconviction petition based on *Miller* and *Buffer,* challenging his negotiated guilty plea for first degree murder, The State in *Parker* had agreed to a cap of 50 years and the defendant had actually been sentenced to 35 years, which was less than the 40-year line drawn in *Buffer. Id.* ¶¶ 3,16. Nonetheless, the court found his claim had merit.

¶ 30    The court in *Parker* noted:

"The defendant contends that he would not have pled guilty to felony murder in exchange for a sentencing cap of 50 years if the guidelines set forth in *Buffer* were established at the time that he entered his guilty plea. Specifically, he contends that he pled guilty after being repeatedly admonished that he could receive a natural-life sentence, which, given the facts of the case and the issuance of *Buffer*, is no longer a reasonable threat." *Id.* ¶ 18.

¶ 31    In contrast to this case, *Parker* involved a successive postconviction petition where the defendant had to show cause and prejudice (*id.* ¶ 17), a higher standard than here, where Mr. Franklin need only show the "gist" of a claim. See *People v. Smith*, 2014 IL 115946, ¶ 35. The *Parker* court found cause and prejudice because, in accepting a 35-year sentence, the defendant was influenced by repeated admonishments that he could receive a life sentence. *Parker*, 2019 IL

App (5th) 150192, ¶¶ 4, 18. The court concluded that "retroactive application of *Buffer* constitutes cause and prejudice for purposes of being granted leave to file a successive postconviction petition." *Id.* ¶ 18.

¶ 32    In *People v. Robinson*, 2021 IL App (1st) 181653, ¶ 33, this court followed *Parker* in reversing the dismissal of a first-stage postconviction petition. As the court noted there, "[the defendant's] rights under the eighth amendment in this context were not known at the time he pleaded guilty; therefore, he could not have voluntarily relinquished them." *Id.* ¶ 30.

¶ 33    Other unpublished decisions of this court have also followed *Parker*. See *People v. Brown*, 2021 IL App (1st) 160060-U, ¶ 35; *People v. Hudson*, 2020 IL App (1st) 170463-U, ¶ 27. These cases reversed dismissals of postconviction petitions that made the same claim that Mr. Franklin makes here. As those courts recognized, while the actual sentence imposed did not violate *Miller* and *Buffer*, the defendant's argument in each case that his guilty plea was influenced by the possibility of a sentence that would have violated the principles in those cases stated at least the gist of a constitutional claim.

¶ 34    The State argues here that *Parker* and these other cases should not be followed because they are inconsistent with the pronouncement of the United States Supreme Court in *Brady v. United States*, 397 U.S. 742, 757 (1970). The Court in that case said:

"[A]bsent misrepresentation or other impermissible conduct by state agents [citation], a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law

as to possible penalties, but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered."

¶ 35    The defendant in *Brady* pleaded guilty to a federal kidnapping charge (see 18 U.S.C. § 1201(a) (West 1970)), under which he faced a possible death penalty. The Supreme Court subsequently held that the death penalty could not be imposed under that statute because the statute impermissibly burdened a defendant's right to a jury trial by making that penalty available only where the defendant refused to waive the right to a jury. *Id*. at 745-46 (citing *United States v. Jackson*, 390 U. S. 570 (1968)).

¶ 36    We see no conflict between *Brady* and the four decisions from this court, all holding that a defendant could state, at least, the gist of a constitutional claim where he pleaded guilty as a juvenile under the threat of a sentence that violated *Miller* and *Buffer*. While there is some language in the *Brady* decision that suggests the kind of blanket rule that the State proffers, when viewed in context, we do not view *Brady* as setting up a bar to the claim that Mr. Franklin makes here. Rather, the Court in *Brady* recognized that a defendant's misapprehension of the law, like a defendant's misapprehension of fact, is a factor that goes to the question of whether the plea was voluntarily and intelligently made. See *People v. McIntosh*, 2020 IL App (5th) 170068, ¶ 39. ('The misapprehension of law or fact goes to the question of whether the plea was voluntarily and intelligently made.")

¶ 37    The State ignores that the decision in *Brady* was based on a finding by the district court, after an evidentiary hearing, that the guilty plea was *not* induced by the defendant's incorrect belief that he could get the death penalty. The Supreme Court summarized the findings at that hearing as follows:

"[P]etitioner decided to plead guilty when he learned that his codefendant was going to plead guilty: petitioner pleaded guilty 'by reason of other matters and not by reason of the statute' or because of any acts of the trial judge. The court concluded that 'the plea was voluntarily and knowingly made.' " *Id.* at 745.

¶ 38    The Court in *Brady* emphasized that "[t]he voluntariness of [the defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it." *Id.* at 749. The Court in *Brady* considered those circumstances, and accordingly we do not read *Brady* as creating a *per se* rule that a significant change in the law as to the available sentence can never support a claim that a guilty plea was unknowing or involuntary. *Brady* does not preclude a finding, such as the ones made in *Parker* and the cases following it, that newly recognized constitutional limitations on juvenile sentencing of which a juvenile defendant was unaware when they pled guilty can support a postconviction claim.

¶ 39    In addition, the *Miller* line of cases may be unique in reference to the dramatic change they represent in sentencing. As both the United States Supreme Court and our supreme court have recognized, *Miller* created a new substantive rule that applies retroactively and to postconviction cases. *Montgomery v. Louisiana*, 577 U.S. 190, 208-09 (2016); *People v. Davis*, 2014 IL 115595, ¶ 41. Both commentators and courts have recognized how sweeping these changes have been. See Guyora Binder & Ben Notterman, Penal Incapacitation: A Situationist Critique, 54 Am. Crim. L. Rev. 1, 2 (2017) ("In two recent cases, *Graham v. Florida* and *Miller v. Alabama*, the Supreme Court changed the landscape of Eighth Amendment jurisprudence by requiring a more searching proportionality review of certain sentences of incarceration."); see also *People v. House*, 2020 IL App (2d) 180040-U, ¶ 17 (recognizing the "sea change of jurisprudence related to life sentencing for juveniles" following *Miller*). Whatever limits might exist on postconviction petitioners'

reliance on changes in sentencing law, such limits may not even be applicable to juveniles who pled guilty prior to *Miller*.

¶ 40    The State also cites one case of this court and several from federal appellate courts that it argues have held that subsequent court decisions finding a potential sentence unconstitutional can never be the basis for a postconviction petition on a guilty plea. This suggests to us that, at best, there is some split in the law. The existence of *Parker* and the cases following it, which we do not think are inconsistent with any controlling authority, make clear that Mr. Franklin's claim is not "indisputably meritless," and thus it must survive first-stage scrutiny. See *People v. Zumot*, 2021 IL App (1st) 191743, ¶¶ 38-39 (the existence of cases that support a petitioner's claim provides the "gist" of a claim, even if there is a case-law split with other cases to the contrary). In short, we reject the State's arguments that we cannot find that Mr. Franklin has stated the gist of a claim here, based on *Parker* and the cases following it.

¶ 41                              IV. CONCLUSION

¶ 42    For the foregoing reasons, the judgment of the circuit court is reversed, and the matter is remanded for second-stage proceedings.

¶ 43    Reversed and remanded.


¶ 44    JUSTICE HARRIS, dissenting:

¶ 45    I respectfully disagree with my colleagues that defendant has stated the gist of a meritorious claim under *Parker* and its progeny. None of those cases acknowledge *Brady*, and thus none sought to distinguish *Brady* as my colleagues do here. However, I do not find the majority's attempt at distinguishing *Brady* to be persuasive, and I would find that this case is firmly governed by *Brady* as binding United States Supreme Court precedent so that defendant's instant constitutional claim

is not even arguable under the law. In other words, because I find *Brady* to be controlling precedent, I reject the majority's conclusion that:

> "at best, there is some split in the law. The existence of *Parker* and the cases following it, *which we do not think are inconsistent with any controlling authority*, make clear that Mr. Franklin's claim is not 'indisputably meritless,' and thus it must survive first-stage scrutiny." (Emphasis added.) *Supra* ¶ 40.

¶ 46     The majority correctly states that the "Court in *Brady* emphasized that '[t]he voluntariness of [the defendant's] plea can be determined only by considering all of the relevant circumstances surrounding it.' " *Supra* ¶ 38 (quoting *Brady*, 397 U.S. at 749). The *Brady* court went on to state:

> "One of these circumstances was the possibility of a heavier sentence following a guilty verdict after a trial. It may be that Brady, faced with a strong case against him and recognizing that his chances for acquittal were slight, preferred to plead guilty and thus limit the penalty to life imprisonment rather than to elect a jury trial which could result in a death penalty. But *even if we assume that Brady would not have pleaded guilty except for the death penalty provision* of [§] 1201(a), this assumption merely identifies the penalty provision as a 'but for' cause of his plea. That the statute caused the plea in this sense does not necessarily prove that the plea was coerced and invalid as an involuntary act." (Emphasis added.) *Brady*, 397 U.S. at 749-750.

In other words,

> "*Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson* prohibits the imposition of the death penalty under § 1201(a), but that decision neither fashioned a new standard for judging the validity of guilty pleas

nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.' " *Id.* at 747.

¶ 47 However, the *Brady* Court ruled out a postplea change in the applicable maximum sentence, including a judicial ruling that the maximum sentence was unconstitutional, as a circumstance relevant to determining whether a guilty plea was made voluntarily and knowingly.

"[J]udgments may be made that in the light of later events seem improvident, although they were perfectly sensible at the time. The rule that a plea must be intelligently made to be valid does not require that a plea be vulnerable to later attack if the defendant did not correctly assess every relevant factor entering into his decision. A defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case or the likely penalties attached to alternative courses of action. More particularly, absent misrepresentation or other impermissible conduct by state agents, [citation], a voluntary plea of guilty intelligently made *in the light of the then applicable law* does not become vulnerable because *later judicial decisions indicate that the plea rested on a faulty premise*. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is *not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered*." (Emphasis added.) *Id*. at 756-57.

¶ 48 Unlike the majority, I believe this is not merely "some language in the *Brady* decision that suggests the kind of blanket rule that the State proffers." *Supra* ¶ 36. Instead, the highlighted

language is stated as a general rule, not merely a ruling on Brady's particular circumstances, that I find fully applicable here. Defendant pled guilty to avoid facing life imprisonment under the statutes in effect when he pled, while *Miller* and its progeny subsequently – that is, months after his plea – cast doubt on whether a life sentence pursuant to those statutes would be constitutional for a defendant who was a minor at the time of the offense. Similarly, in *Brady*, plea counsel advised Brady that a jury could give him the death penalty and then, "nine years later, in *United States v. Jackson*, [citation], the Court held that the jury had no such power as long as the judge could impose only a lesser penalty if trial was to the court or there was a plea of guilty." *Id*. at 756. Just as the *Brady* court held that "these facts do not require us to set aside Brady's conviction" (*id*.), I conclude that defendant's negotiated guilty plea should not be vacated on his similar claim.

¶ 49    Except that *Miller* and its progeny effected a sea change in the sentencing of minors, which I do not doubt, the majority does not support its remark that "[w]hatever limits might exist on postconviction petitioners' reliance on changes in sentencing law, such limits may not even be applicable to juveniles who pled guilty prior to *Miller*." *Supra* ¶ 39. While the *Brady* court was not dealing with an actual or *de facto* life sentence imposed on a juvenile, it was considering a case where a defendant pled guilty after being advised that he faced the *death penalty* if he chose a jury trial, a more daunting prospect than this defendant faced. Also, while defendant was a minor at the time of the offense, he was a 33-year-old adult when he pled guilty so that this court does not face the issues of voluntariness and knowledge that we might face for a defendant who pled while still a minor. Thus, I find the calculus or circumstances here regarding the voluntariness and knowledge of a plea to be substantively indistinguishable from *Brady*: a defendant pled guilty believing that he faced a certain maximum sentence, that belief was correct as the law stood at the time of the plea, and a postplea judicial ruling cast doubt on the constitutionality of that maximum sentence.

¶ 50    Moreover, a potential natural-life sentence for a minor is not *per se* unconstitutional. The *Miller* court held "that the Eighth Amendment forbids a sentencing scheme that *mandates* life in prison without possibility of parole for juvenile offenders." (Emphasis added.) *Miller*, 567 U.S. at 479. It rejected an "argument that the Eighth Amendment requires a categorical bar on life without parole for juveniles, or at least for those 14 and younger." *Id*. "Although we do not foreclose a sentencer's ability to make that judgment in homicide cases, we require it to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." *Id*. at 480. A defendant who was a minor at the time of his or her offense "may be sentenced to life imprisonment without parole, but only if the trial court determines that the defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation." *People v. Holman*, 2017 IL 120655, ¶ 46.

¶ 51    This case is therefore similar to *People v. Beronich*, 334 Ill. App. 3d 536 (2002), where this court followed *Brady* in rejecting a challenge to a 1990 guilty plea that it was involuntary because the defendant had faced a possible extended-term sentence rendered unconstitutional by *Apprendi v. New Jersey,* 530 U.S. 466 (2000). The *Beronich* defendant contended:

>    "that his guilty plea was not knowing and voluntary because the trial court misadvised him about the maximum possible penalty. The trial court told him that he faced a maximum of 100 years or natural life in prison; however, *Apprendi* later made those sentences unconstitutional. Defendant contends that had he known that he faced a maximum of only 60 years in prison, he would not have agreed to accept a 50-year sentence, which was only 10 years less than the maximum." *Beronich*, 334 Ill. App. 3d at 538.

However, "*Apprendi* does not hold that a State may never subject a defendant to a sentence beyond the usual statutory maximum, only that the facts justifying the enhancement (other than prior

convictions) must be proved to a jury beyond a reasonable doubt." *Id*. at 539. The admonishment that the "defendant was eligible for extended-term sentences was not only true under the then-existing law but remains literally true today." *Id*. Improper admonishments about the sentencing a defendant faces may render a guilty plea unknowing, but "whether a guilty plea is intelligent and voluntary is judged in light of the law that existed when the plea was entered and a voluntary plea is not invalidated by later changes in the law." *Id*. at 541 (citing *Brady*, 397 U.S. at 757).

¶ 52    Similarly, it "was not only true under the then-existing law but remains literally true today" (*id*. at 539) that defendant could receive at least a *de facto* life sentence as defined in *Buffer* if he was to be convicted of first degree murder, as he was charged before his plea, and the State was to prove him permanently incorrigible. Even absent a finding of incorrigibility, a defendant who was a minor at the time of his offense can receive a prison sentence of up to 40 years. While defendant did not know about *Miller* and its progeny when he pled guilty, he knew that his plea was eliminating the need for the State to prove the elements of the charges against him and to make a case in aggravation at sentencing. He traded uncertainty – he could have been found guilty of first degree murder, he could have received a longer prison sentence than 30 years – for certainty. Now he wants to challenge his sentence on his negotiated plea because *Miller* and its progeny bring him hindsight he did not have when he pled. However, "we evaluate the plea's knowing and voluntary character by the law at the time it was entered, not with hindsight." *Id*. at 541.

¶ 53    For the foregoing reasons, I would affirm the judgment of the circuit court summarily dismissing defendant's postconviction petition.